UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

| | |
|---|---|
| DOUGLAS N. GAER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN PUBLIC EDUCATION, INC., et al.,<br><br>Defendants. | No. 3:10-cv-00081-JPB<br><br>CLASS ACTION<br><br>The Honorable John Preston Bailey<br><br>**MEMORANDUM OF DOUGLAS GAER IN OPPOSITION TO CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |

# TABLE OF CONTENTS

**BACKGROUND** .................................................................................................... 1

**ARGUMENT** ......................................................................................................... 2

    I.    Mr. Gaer Should Be Appointed Lead Plaintiff ..................................................... 2

        A.    Mr. Gaer Filed the Complaint in This Action .............................................. 2

        B.    Mr. Gaer Has the Largest Financial Interest in the Relief Sought by the Class .......................................................................................................... 3

            i.    The Retirement Trust Suffered No Cognizable Losses ............................. 3

            ii.    Mr. Gaer Suffered Cognizable Losses ...................................................... 6

        C.    Mr. Gaer Is the Only Adequate and Typical Lead Plaintiff Candidate ...... 6

            i.    Mr. Gaer Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ......................................................................................... 6

            ii.    The Retirement Trust Is Not Adequate or Typical and Fails to Satisfy the Requirements of Federal Rule of Civil Procedure 23 ............................... 8

    II.    Mr. Gaer's Selection of KSF as Lead Counsel Should be Approved ........... 9

**CONCLUSION** .................................................................................................... 10

Named Plaintiff and Lead Plaintiff movant Douglas N. Gaer respectfully submits this memorandum of law in support of his appointment as lead plaintiff and approval of his selection of Kahn Swick & Foti, LLC ("KSF") as lead counsel and in opposition to the motion of the City of Miami Fire Fighters' and Police Officers' Retirement Trust (the "Retirement Trust") to be appointed as lead plaintiff and to have its selection of lead and liaison counsel approved. The Retirement Trust suffered no cognizable loss during the Class Period and is neither adequate nor typical of the members of the Class.

## BACKGROUND

On August 12, 2010, proposed lead counsel KSF filed a complaint on behalf of named plaintiff Douglas N. Gaer and all other persons who purchased the common stock of American Public Education, Inc. ("APEI or the "Company") between February 22, 2010, and August 5, 2010, inclusive (the "Class Period."). On August 13, 2010, in accordance with the PSLRA, 15 U.S.C. §75u-4(a)(3)(A)(i), KSF and Mr. Gaer filed a notice informing class members of their right to file a motion for lead plaintiff within 60 days of that notice, 15 U.S.C. §78u-4(a)(30(A)(i)(II). Ex. A to the Declaration of Lewis S. Kahn ("Kahn Decl.").

On October 12, 2010, a single movant, the Retirement Trust, moved to serve as lead plaintiff in response to the notice. The Retirement Trust claims to have sustained a loss of $158,719.59 based on its purchase of 9,341 shares during the Class Period. Retirement Trust MLP at 4. In truth, however, the Retirement Trust suffered no cognizable loss and does not even have standing to bring a claim on behalf of the putative class. The Retirement Trust purchased 9,341 shares during the Class Period and sold *all* of those 9,341 shares before the truth began to be revealed, causing the stock to drop. Because the Retirement System sold its shares while the stock was still inflated, it did not suffer any loss whatsoever as a result of the alleged

1

wrongdoing, as the Supreme Court has held. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[I]f, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

By contrast, Mr. Gaer, who filed the complaint in this action, has cognizable losses of $1,154.87. Kahn Decl. Ex. B. Mr. Gaer purchased 100 shares during the Class Period and held all of those shares until after the Class Period; he thus suffered losses as the inflation was eradicated from the stock price. Mr. Gaer has the greatest financial interest in the litigation, is adequate and typical of the other members of the putative Class, and should be appointed lead plaintiff.

## ARGUMENT

### I. Mr. Gaer Should Be Appointed Lead Plaintiff

The PSLRA states that "the most adequate plaintiff in any private action arising under this title is the person or group of persons that--

> **(aa)** has either filed the complaint or made a motion in response to a notice under Subparagraph (A)(i);
>
> **(bb)** in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> **(cc)** otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. §78u-4(a)(3)(B). As discussed in detail herein, Mr. Gaer satisfies each of these three elements and should be appointed lead plaintiff of this action.

### A. Mr. Gaer Filed the Complaint in This Action

Mr. Gaer filed the initial complaint in this action, *Gaer v. American Public Education, Inc., et al*, 3:10-cv-00081-JPB, and thus satisfies Section (aa) of the PSLRA's lead plaintiff provisions, which requires that the lead plaintiff either "file[] the complaint or ma[ke] a motion"

for lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *See, e.g., Dolan v. Axis Capital Holdings, Ltd.*, No. 04 Civ. 8564(RJH), 2005 WL 883008, at *3 (S.D.N.Y. August 13, 2004) (citing *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 425, 433 n. 12 (E.D. Va. 2000)) ("Although neither filed a motion to be appointed as lead plaintiff prior to the sixty-day deadline . . , both Dolan and Schimpf filed a complaint within the notice period. . . . Both therefore satisfy the first prong of § 78u-4(a)(3)(B)(iii).").

### B. Mr. Gaer Has the Largest Financial Interest in the Relief Sought by the Class

#### i. The Retirement Trust Suffered No Cognizable Losses

According to the Retirement Trust's loss chart (Ex. C to the Retirement Trust's MLP), it held 16,000 shares at the start of the Class Period. Because these 16,000 shares were purchased before any alleged false and misleading statements were made, they were not purchased at prices that were inflated as a result of the fraud (nor was the purchase of those shares induced by the fraud), and thus no cognizable losses can be associated with these shares.[1]

During the Class Period, the Retirement Trust purchased an additional 9,341 shares at inflated prices. However, the Retirement Trust sold all of those shares before the truth was revealed and caused the stock to drop. Thus, the Retirement Trust did not suffer any losses related to the fraud. *See Dura*, 544 U.S. at 342 ("[I]f, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

The Retirement Trust attempts to paint a very different picture, however: it claims to have suffered losses on the 9,341 shares purchased during the Class Period because, after its

---

[1] *See e.g., Roots P'ship v. Lands' End*, 965 F.2d 1411, 1420 (7th Cir. 1992) ("post-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have affected the price at which plaintiff actually purchased.") (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 US 723, 755 (1975)); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 501 (9th Cir. 1992) ("We need not determine whether the statement is misleading because it was issued after [plaintiff] bought his stock and thus could not have affected [the stock's] market price or [plaintiff's] decision to buy on that date.").

sales of 9,341 shares, it still held 16,000 shares at the end of the Class Period. In making this argument, the Retirement Trust claims that the 9,341 shares sold during the Class Period should be tied to some of the 16,000 purchased *before* the Class Period, rather than the 9,341 shares purchased *during* the Class Period. This approach is akin to the first-in-first-out, or FIFO, method, which matches sales with the first, or oldest, purchases of stock. Under this method, the Retirement Trust is able to aver that it has losses because it matches unrelated transactions.

The correct approach, however, is the last-in-first-out, or LIFO, method, which matches sales with the most recent purchases.[2] In other words, as demonstrated by the diagram below, the 9,341 shares sold during the Class Period should be matched with the last/most recent sales: the 9,341 shares purchased during the Class Period.

---

[2] LIFO is the preferred method for calculating losses. *See, e.g., In re Pfizer Inc. Sec. Litig.,* 233 F.R.D. 334, 338 n.3 (S.D.N.Y. 2005) ("[FIFO] has fallen out of favor in this District because of its tendency to overstate the losses of institutional investors and to understate gains made from stock during the class period"); *In re Comdisco*, No. 01 C 2110, 2004 WL 905938, at *2 (N.D.Ill. Apr. 26, 2004) ("[A]ny real-world analysis of how investors have fared in terms of their transactions in a security during a specified period necessarily first matches their in and out transactions *during that period,* and hence calls for LIFO rather than FIFO treatment." (emphasis in original)); *In re Cable & Wireless, PLC, Sec. Litig.,* 217 F.R.D. 372, 378-79 (E.D. Va. 2003) ("Because such an approach encompasses purchases made outside the class period, courts have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases." (internal quotation marks omitted)); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) ("The loss calculated on a FIFO (first-in, first-out) basis is greater, *but LIFO, not FIFO, is the preferred methodology in these determinations*." (emphasis added) (citations omitted)); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 402 (D.Mass. 2007) ("Like other courts that have examined the issue, this court concludes *as a matter of law* that *LIFO is the preferred approach* for assessing class period damage [on summary judgment]." (emphasis added) (citation omitted)).



When LIFO is applied, and the Retirement Trust's Class Period purchases of stock (9,341 shares) are matched with the Class Period sales of stock (9,341 shares), as opposed to being matched arbitrarily with some portion of the 16,000 shares held at the end of the Class Period, the Retirement Trust has no losses; The 9,341 shares were sold before the truth was revealed and the shares were not damaged.

The LIFO approach is even more obviously essential here in light of the fact that the purchases and sales at issue are undoubtedly related, as evidenced by the unique, matching number of shares that were purchased and sold during the class period (9,341) and the matching number of shares held both before and after the class period (16,000). Moreover, the Retirement Trust's erroneous FIFO approach would allow it to improperly recognize losses while ignoring profits—*i.e.*, the extent to which the Retirement Trust actually benefited from the fraud. The

5

Retirement Trust sold 9,341 shares while the stock was inflated, thus profiting from that inflation, and negating any damages they would have suffered from the 9,341 purportedly damaged shares that the Retirement Trust claims to have held after the truth came out.

In sum, the Retirement Trust has no cognizable losses under *Dura*, 544 U.S. 336. *See also In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (holding that "any losses that [plaintiff] may have incurred before [defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation").

### ii. Mr. Gaer Suffered Cognizable Losses

By contrast, as demonstrated in Exhibit A to the Kahn Declaration, Mr. Gaer purchased 100 shares during the Class Period for the artificially inflated price of approximately $39.76 per share. Unlike the Retirement System, Mr. Gaer held his stock as the inflation was eradicated and the share value plummeted to a value of less than $28.22 per share. (By contrast, the Retirement System sold its shares for prices in excess of $40 per share). Mr. Gaer thus suffered legally cognizable losses of $1,154.87, and has the largest financial interest in this litigation of any lead plaintiff movant or named plaintiff.

## C. Mr. Gaer Is the Only Adequate and Typical Lead Plaintiff Candidate

### i. Mr. Gaer Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Rule 23(a) provides that a party may serve as a class representative if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two–typicality and adequacy–

address the personal characteristics of the movant and are applicable to the lead plaintiff consideration. *See In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003).

Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264-65 (3d Cir. 2001). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ('"With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members.'") (citation omitted). The court should consider whether movant's circumstances '"are markedly different or . . . the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based.'" *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988) (citation omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. Mr. Gaer is typical because, like all other class members, he: (1) purchased APEI securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. His claims and the claims of other class members arise out of the same
course of events.

Under Rule 23(a)(4), the representative must also "fairly and adequately protect the interests of the class." A movant is adequate where there is the absence of potential conflict between the proposed lead plaintiff and the class member and the lead plaintiffs' choice of

7

counsel is qualified, experienced. and able to vigorously conduct the proposed litigation. *See Cree*, 219 F.R.D. at 372. Here, Mr. Gaer is an adequate representative of the class because his interests in aggressively pursuing the claims against defendants are clearly aligned with the interests of the members of the class, who similarly suffered losses because of defendants' false and misleading statements. There is no antagonism between Mr. Gaer's interests and those of the other members of the class. In addition, as demonstrated below, Mr. Gaer's proposed lead counsel is highly qualified and experienced. Thus, Mr. Gaer satisfies the requirements of Rule 23 for the purposes of this Motion.

### ii. The Retirement Trust Is Not Adequate or Typical and Fails to Satisfy the Requirements of Federal Rule of Civil Procedure 23

Because the Retirement Trust sold its shares before the truth began to be revealed, it lacks standing, is subject to unique defenses, and is neither typical nor adequate. *See, e.g., In re Infineon Tech. AG Sec. Litig.*, 266 F.R.D. 386, 398 (N.D. Cal. 2009) (finding that investors who sold stock before the date that the corporation released corrective information lacked standing to bring action and limiting the class to investors who sold after the truth began to be revealed); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig*, 574 F.3d 29, 37-41 (2d. Cir 2009) (vacating district court order appointing as class representative an investor who sold its stock before the alleged corrective disclosures: "We conclude that Plaintiffs have not presented sufficient evidence to demonstrate that the in-and-out traders will even 'conceivably' be able to prove loss causation as a matter of law, and that they therefore should not have been included in the certified class.); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F.Supp.2d 993, 997-98 (N.D. Cal. 1999) ("NYC counters . . . that even "in-and-out" traders may have had losses. . . . While NYC's analysis may ultimately turn out to be correct, the court believes a more basic approach is required for determination of lead plaintiff. The court therefore holds that it is inappropriate to

count losses (or profits) by "in-and-out" traders in this case when determining the plaintiff with the greatest financial interest in the litigation.").

Because the Retirement Trust lacks damages; sold shares during the Class Period, thus profiting from the fraud; and does not have standing to bring a claim, its claims will be atypical at best. The Retirement Trust is also inadequate because any novel or creative theories in support of the idea that it has causation or damages will be antagonistic to the claims of class members. Moreover, the Retirement Trust's utter lack of damages, and thus lack of claim, make it an inadequate class representative and could foreseeably prevent the class from being certified at all. *Milligan* v. *Am. Airlines, Inc.,* 327 Fed. Appx. 694, 696 (9th Cir. 2009) (class plaintiff may not assert claims of class members that its does not individually share); *Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir. 2003) ("if Lierboe has no stacking claim, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail.").

The Retirement Trust is therefore inadequate and its motion be appointed lead plaintiff of this action should be denied.

## II. Mr. Gaer's Selection of KSF as Lead Counsel Should be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 273-276 (3d Cir. 2001); *see also Cohen v. U.S. Dist. Court for the Northern Dist. of Cal.*, 586 F.3d 703, 710 (9th Cir. 2009) ("the lead plaintiff, not the district court, selects lead counsel"). "Unless a lead plaintiff's selection of counsel would fail to protect the interest of the class, a court should not interfere with the selection process." *In re Herley Ind., Inc.*, No. 06-2596, 2010 WL 176869, at *5 (E.D. Pa. Jan. 15, 2010).

Mr. Gaer has selected KSF to serve as lead counsel. The attorneys at KSF have not only successfully prosecuted complex securities fraud actions, but they have also successfully prosecuted many other types of complex class actions. *See* KSF Resume at Kahn Decl. Ex. C. Furthermore, KSF has continually invested time and resources in carefully investigating and prosecuting this case. The Court may be assured that the proposed lead counsel will provide the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Mr. Gaer respectfully requests the court appoint him as lead plaintiff in the consolidated action pursuant to 15 U.S.C. §75u-4(a)(3)(B) and approve his selection of KSF as lead counsel.

Dated: October 29, 2010        /s/ Carl N. Frankovitch

CARL N. FRANKOVITCH (WV Bar #4746)
**FRANKOVITCH, ANETAKIS,
   COLANTONIO & SIMON**
337 Penco Road
Weirton, WV 26062
Telephone: (304) 723-4400
Facsimile: (304) 723-5892
Email: carl@facslaw.com

**Local Counsel for Plaintiff Mr. Gaer**

KIM MILLER
**KAHN SWICK & FOTI, LLC**
500 Fifth Avenue, Ste. 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
Email: kim.miller@ksfcounsel.com

LEWIS KAHN
**KAHN SWICK & FOTI, LLC**
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com

**Attorneys for Named Plaintiff and Lead Plaintiff**

10

**Movant Mr. Gaer and Proposed Lead Counsel for the Class**